<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| OCEAN PORT ENTERPRISES, INC.,<br><br>          Plaintiff,<br><br>   v.<br><br>FOX GLASS OF NEW JERSEY, INC.,<br><br>          Defendant. | Civil Action No. 25-13901 (GC) (JBD)<br><br><u>**MEMORANDUM OPINION**</u> |

<u>**CASTNER, District Judge**</u>

**THIS MATTER** comes before the Court upon Plaintiff Ocean Port Enterprises, Inc.'s Motion to Remand this case to the Superior Court of New Jersey, Mercer County.  (ECF No. 6.) Defendant Fox Glass of New Jersey, Inc., opposed, and Ocean Port replied.  (ECF Nos. 10 & 15.) The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure (Rule) 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Plaintiff's Motion to Remand is **DENIED.**

**I.      BACKGROUND**

This matter concerns an alleged breach of contract, and this Motion to Remand turns on whether the Court has diversity jurisdiction over the parties.  Accordingly, the Court will provide only the background information necessary to resolve the instant matter.

**A.      The Parties**

Plaintiff Ocean Port, a Pennsylvania corporation, is the owner of real property located at 2 Pearl Street in Trenton, New Jersey, and Ocean Port's only purpose is to hold and manage that

property.  (ECF No. 2 at 9; ECF No. 6-1 at 9; ECF No. 10-1 at 5; ECF No. 10-3 at 3.)[1]  The property consists of a warehouse and other smaller units.  (ECF No. 2 at 9.)

During all relevant times, Ocean Port used the Pennsylvania address of its president and 50% shareholder, Dean Manutti, as its corporate mailing address.  (ECF No. 2 at 2; ECF No. 6-1 at 5; ECF No. 6-2 at 1.)  Richard Kohler owned the remaining 50% until his death in April 2025, at which point that 50% ownership interest passed to his estate.  (ECF No. 10-3 at 2.)  Because Ocean Port's property is in New Jersey, it pays New Jersey property taxes, but Ocean Port lists its corporate address as 1933 Berrel Court in Yardley, Pennsylvania in those New Jersey tax records. (ECF No. 10-1 at 67.)  In addition to New Jersey property taxes, Ocean Port pays Pennsylvania state income taxes, and the address used to file those taxes is also 1933 Berrel Court.  (*Id.* at 72.) Tina Kohler, the widow of Richard Kohler and the personal representative of his estate, certifies that to the best of her knowledge, when her husband was alive and until the present, Manutti "took day-to-day responsibility for Ocean Port's routine activities" from "Manutti's home in Pennsylvania."  (ECF No. 10-3 at 3.)  Manutti, by contrast, certifies that he "conduct[s] the business of Ocean Port at the [New Jersey property.]"  (ECF No. 6-2 at 1.)  But Manutti receives "rent payments, bills, and other important mail" at his personal residence in Pennsylvania.  (*Id.*)[2]

Defendant Fox Glass is a corporation organized under the laws of New Jersey with its principal place of business in Trenton.  (ECF No. 2 at 2, 9.)  Like for Ocean Port, Richard Kohler and Manutti were also the two key principals at Fox Glass.  Until Richard Kohler's death in April

---

[1]    Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

[2]    The record is not clear about whether Dean Manutti's personal residence is located at (1) 1933 Berrel Court, (2) the Pennsylvania address listed in Ocean Port's Articles of Incorporation, or (3) a different Pennsylvania address.

2025, Manutti was the minority shareholder of Fox Glass and Richard Kohler was the majority shareholder and president.  (ECF No. 2 at 3; ECF No. 10-3 at 9.)  Following Richard Kohler's death, Manutti retained his minority ownership in Fox Glass and the majority ownership passed to Richard Kohler's estate.  (ECF No. 6-2 at 1; ECF No. 10-3 at 1.)  As of at least June 2025, Tina Kohler has served as president of Fox Glass.  (ECF No. 2 at 3.)

### B.    Factual and Procedural Background

On November 1, 2023, Ocean Port alleges that the parties executed a Commercial Lease Agreement under which Ocean Port leased the warehouse space to Fox Glass.  (ECF No. 2 at 9.) Under that Agreement, Ocean Port alleges that Fox Glass was required to make rent payments of $13,500.00 per month from November 1, 2023 through October 31, 2024 and $14,540.00 from November 1, 2024 through October 31, 2025.  (*Id.* at 10.)  Ocean Port alleges Fox Glass did not pay rent in November 2023, December 2023, or from May 2024 onwards.  (*Id.*)  On March 14, 2025, Ocean Port filed a Complaint in the Superior Court of New Jersey, Mercer County, Docket Number MER-L-00179-25.  (*Id.* at 13.)  Ocean Port brings claims for breach of contract and restitution.  (*Id.* at 10-11.)[3]

On July 29, 2025, Fox Glass filed a notice of removal.  (ECF No. 1.)  The next day, Fox Glass filed an amended notice of removal.  (ECF No. 2 at 1-7.)  In that amended notice, Fox Glass asserts that its president, Tina Kohler, did not receive a copy of the Complaint until June 30, 2025. (*Id.* at 3.)[4]  Fox Glass contends that removal is proper because the Court has diversity jurisdiction:

---

[3]    Fox Glass argues that the Commercial Lease Agreement is a sham contract orchestrated by Manutti without Richard Kohler's consent, (ECF No. 10 at 9-10), but the Court will not address the merits of the breach of contract dispute at this time.

[4]    Manutti certifies that, as a representative of Fox Glass, he received Ocean Port's Complaint by way of email on March 21, 2025.  (ECF No. 6-2 at 1.)  If March 21, 2025 were the date of service, then Fox Glass's July 30, 2025 amended notice of removal would be improper because more than thirty days elapsed between service and removal.  *See* 28 U.S.C. § 1446(b).  However,

Ocean Port is a citizen of only Pennsylvania, Fox Glass is a citizen of only New Jersey, and the amount in controversy exceeds $75,000. (*Id.* at 5.) On October 3, 2025, Ocean Port filed the instant Motion to Remand, principally arguing that Manutti operates Ocean Port from the Trenton property, so the Court does not have diversity jurisdiction because both corporations are citizens of New Jersey. (ECF No. 6-1 at 7-10.)

In late October 2025, a Fox Glass employee, Joseph Salvaggio, inspected the New Jersey property at Tina Kohler's direction in order to investigate whether Manutti operated the business from the Trenton property. (ECF No. 10-2 at 1.) Salvaggio made two visits—one on October 24 at 2:15 PM and one on October 27 at 6:30 AM. (*Id.*) Manutti was at the property during both visits, but Salvaggio certified that he "did not see any indication that [Manutti] was working in any office space within the [New Jersey property]." (*Id.* at 1-2.) During his first visit, Salvaggio took photographs of the exterior which revealed that "the backdoor was padlocked, the windows were boarded up, there were graffiti on the walls, and there was trash in the parking lot." (*Id.* at 2; *see also id.* at 9.) During both visits, Salvaggio took photographs of the interior, which "contained exposed framing, unfished walls, exposed wiring, random materials, tools and debris scattered throughout." (*Id.* at 3; *see also id.* at 15-31.) Ocean Port asserts in its briefing, however, that Manutti "has a desk and computer at the [New Jersey property] where Ocean Port's electronic files are stored[.]" (ECF No. 15 at 7.)

---

"service by email is not valid under . . . New Jersey Court Rules." *Stardust Recreation Ass'n v. USA Mgmt. LLC*, Civ. No. 22-4746, 2024 WL 4052991, at *3 (D.N.J. Sept. 5, 2024) (citing N.J. Ct. R. 4:4-4). And "the thirty-day removal deadline is not triggered by mere receipt of the complaint, but only by formal service." *Alicea v. Outback Steakhouse*, Civ. No. 10-4702, 2011 WL 1675036, at *3 (D.N.J. May 3, 2011) (citing *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 344-48 (1999)), *report and recommendation adopted*, 2011 WL 2444235 (D.N.J. June 9, 2011). The earliest date on which Fox Glass could have been properly served was on June 30, 2025, when Tina Kohler received a copy of the Complaint at her home in Florida. (ECF No. 2 at 3.) Accordingly, Fox Glass timely removed this matter.

4

## II.      LEGAL STANDARD

A defendant may remove a case from state to federal court where "the district courts of the United States have original jurisdiction." *Entrekin v. Fisher Sci. Inc.*, 146 F. Supp. 2d 594, 603 (D.N.J. 2001) (citing 28 U.S.C. § 1441(a)).  Following the removal of a case, the plaintiff may move to remand the case to state court.  *See Atl. Neurosurgical Specialists v. Anthem, Inc.*, Civ. No. 21-20052, 2022 WL 3273952, at *1 (D.N.J. Aug. 11, 2022).  When an action is removed to federal court, the removing party maintains the burden of showing that the court has subject-matter jurisdiction.  *See Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004).  "The [c]ourt must also strictly construe the removal statutes against removal and resolve any doubts in favor of remand." *Entrekin*, 146 F. Supp. 2d at 604; *see also Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990) ("A district court must resolve all contested issues of substantive fact . . . and . . . any uncertainties as to the current state of controlling substantive law in favor of the plaintiff.").

## III.      DISCUSSION

Ocean Port argues that its principal place of business is in New Jersey, so the Court lacks diversity jurisdiction—given that Fox Glass is also a citizen of New Jersey—and must remand. (ECF No. 6-1 at 7-10.)  Fox Glass responds that remand is improper because Ocean Port is a citizen of Pennsylvania and the Court therefore does have diversity jurisdiction.  (ECF No. 10 at 23-25.) In the alternative, Fox Glass requests the Court permit limited jurisdictional discovery.  (*Id.* at 25-27.)

"A civil action brought in state court may be removed by the defendant to federal district court if the federal court would have had original jurisdiction over the claim."  *Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 346 (3d Cir. 2013) (citing 28 U.S.C. § 1441(a)). "'Diversity of citizenship subject matter jurisdiction falls within the original jurisdiction of the

district court,' pursuant to [28 U.S.C.] § 1332(a) . . . and thus 'a state court case that implicates diversity jurisdiction' may generally be removed[.]" *Id.* (quoting *Brown v. Francis*, 75 F.3d 860, 865 (3d Cir. 1996)). "Jurisdiction under § 1332(a) requires 'complete diversity,' meaning that 'no plaintiff can be a citizen of the same state as any of the defendants.'" *Id.* (quoting *Grand Union Supermarkets of the V.I., Inc. v. H.E. Lockhart Mgmt., Inc.*, 316 F.3d 408, 410 (3d Cir. 2003)). "Diversity of citizenship must have existed at the time the complaint was filed, and at the time of removal, and the burden is on the removing party to establish federal jurisdiction." *Id.* (citations omitted).

"Section 1332(a) grants federal courts jurisdiction over civil actions between 'citizens of different [s]tates.'" *Id.* at 347 (citing 28 U.S.C. § 1332(a)(1)). "[I]t is well established that a corporation is considered a 'citizen' for purposes of that provision." *Id.* (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 189 (1990)). "[A] corporation is a citizen of both its state of incorporation and the state 'where it has its principal place of business.'" *Id.* (citing 28 U.S.C. § 1332(c)(1)). As the Supreme Court has held, "the phrase 'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010). This "nerve center" is typically found at a corporation's headquarters and is "a single place." *Id.* at 81, 93. However, to be the "nerve center," that place must "actually [be] its center of direction, 'not simply an office where the corporation holds its board meetings,' or 'a bare office with a computer.'" *Johnson*, 724 F.3d at 347 (quoting *Hertz*, 559 U.S. at 93, 97). Nor does "[t]he 'nerve center' test . . . depend on what address a company lists when filing government forms or what address the company provides to members of the public." *Aizen v. Am. Healthcare Admin. Servs.*, Civ. No. 18-15195, 2019 WL 4686811, at *7 (D.N.J. Sept. 26, 2019). Instead, the inquiry focuses on the place where a corporation's "top

officers . . . direct activities[.]" *Pierre v. Otsuka Am. Pharms.*, Civ. No. 23-21848, 2024 WL 1704847, at *4 (D.N.J. Apr. 19, 2024) (citing *Hertz*, 559 U.S. at 96).

However, "[d]istrict courts have the authority to allow discovery in order to determine whether subject-matter jurisdiction exists." *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 108 (3d Cir. 2015). But "only those [parties] who have provided some basis to believe jurisdiction exists are entitled to discovery on that issue." *Id.* "The corollary of this principle is that a [party] need not allege an airtight case before obtaining discovery." *Id.* While *Lincoln* was decided in the context of a motion to dismiss, "the same logic . . . applies to remand decisions." *Mithril GP Emp. Feeder LLC v. McKellar*, Civ. No. 19-2144, 2020 WL 3206555, at *1 (D. Del. June 15, 2020) (granting the defendant's request for jurisdictional discovery to determine whether the court had diversity jurisdiction) (citing *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 811 (3d Cir. 2016)); *see also Roche v. Aetna Health Inc.*, Civ. No. 13-3933, 2014 WL 1309963, at *2 (granting request for jurisdictional discovery in context of motion to remand); *La Stella v. Aquion, Inc.*, Civ. No. 19-10082, 2020 WL 3489528, at *1 (D.N.J. June 26, 2020) (describing procedural history in which court order denied motion to remand without prejudice and ordered limited jurisdictional discovery to determine whether amount in controversy requirement was satisfied for Class Action Fairness Act jurisdiction). Jurisdictional discovery is particularly appropriate when there is "an imbalance in access to information." *Rocke v. Pebble Beach Co.*, 541 F. App'x 208, 213 (3d Cir. 2013) (finding district court abused discretion in denying jurisdictional discovery).

Here, the Court finds limited jurisdictional discovery is appropriate. The dispute boils down to where Ocean Port's executives "direct[ed], control[ed], and coordinate[d]" Ocean Port's activities. *Hertz Corp.* 559 U.S. at 80. And because "[d]iversity of citizenship must have existed at the time the complaint was filed, and at the time of removal," *Johnson*, 724 F.3d at 346, the

7

relevant timeframe is between March 14, 2025 (the date Ocean Port filed the state court Complaint) and July 30, 2025 (the date Fox Glass filed the amended notice of removal).  (*See* ECF No. 2 at 1-7, 13.)  The parties do not dispute that the executive controlling Ocean Port's activities was Manutti.  (ECF No. 6-1 at 9; ECF No. 10 at 24.)  However, the parties offer competing evidence for where Manutti conducted the business activities of Ocean Port.  Some of the evidence is of less importance.  For example, Fox Glass submits that Ocean Port used Manutti's home address as its mailing address and lists a Pennsylvania address in both its New Jersey and Pennsylvania tax forms.  (ECF No. 10-1 at 67, 72.)  But the "nerve center" test does not "depend on what address a company lists when filing government forms or what address the company provides to members of the public."  *Aizen*, 2019 WL 4686811, at *7.  And while Manutti concedes that he receives "rent payments, bills, and other important mail" in Pennsylvania, (ECF No. 6-2 at 1), this fact does not necessarily mean he *directs* Ocean Port's activities from the same address.

Fox Glass's site visits also create ambiguity.  On the one hand, the New Jersey property was largely boarded up and barren, (ECF No. 10-2 at 1-3, 9, 15-31), suggesting it is implausible that Manutti controlled the company from that location.  On the other hand, Manutti was at the property during both—apparently unannounced—site visits, and one of those visits occurred at 6:30 AM.  (*Id.* at 1-3.)  It may be that Manutti conducts Ocean Port's business in Trenton, New Jersey, but the current record does not answer that question definitively.  Further, Ocean Port asserts that Manutti uses a "desk and computer" at the property to conduct the company's business. (ECF No. 15 at 7.)  While the Supreme Court cautioned that "a bare office with a computer" is likely insufficient to be the center of direction, *Hertz*, 559 U.S. at 97, the Third Circuit later clarified that *Hertz* concerned a "sprawling operating company" and, accordingly, a smaller company may need less "to direct and control the company's limited work." *Johnson*, 724 F.3d at

8

354.  Therefore, it may be that all Manutti needed was a single computer to operate his New Jersey property, but the record is again limited.  Finally, the chief problem with the site visits is that they occurred in October 2025, after both the filing and removal of the Complaint.  Thus, the record does not shed light on the status of the New Jersey property during the relevant time periods—the date of the Complaint and the operative notice of removal—for the jurisdictional analysis.  *See Johnson*, 724 F.3d at 346.

In addition to the facts stemming from mailing addresses, tax forms, and site visits, the Court has been presented with two conflicting certifications.  Tina Kohler certifies that to the best of her knowledge, Manutti "took day-to-day responsibility for Ocean Port's routine activities" from "Manutti's home in Pennsylvania" at all relevant times.  (ECF No. 10-3 at 3.)  Manutti, by contrast, certifies that he "conduct[s] the business of Ocean Port at the [New Jersey property.]"  (ECF No. 6-2 at 1.)  This conflict is key to determining whether this Court has subject matter jurisdiction over the parties.  Because there is an "an imbalance in access to information" given that Ocean Port has greater access to information concerning Manutti's business activities than does Fox Glass, *Rocke*, 541 F. App'x at 213, and because Fox Glass has "provided some basis to believe jurisdiction exists," even if not "airtight," *Lincoln*, 800 F.3d at 108, the Court finds limited discovery is warranted.[5]

---

[5]    Ocean Port argues that even if it is a citizen of Pennsylvania, remand is proper under the forum-defendant rule because Fox Glass is a citizen of New Jersey.  (ECF No. 6-1 at 10 (citing 28 U.S.C. § 1441(b)(2)).  Fox Glass offers two responses.  First, Fox Glass contends that the forum-defendant rule does not apply because Fox Glass was never properly served.  (ECF No. 10 at 22.)  *See also Paddock v. Novartis Pharms. Corp.*, Civ. No. 25-407, 2025 WL 1908806, at *2 (D. Del. July 11, 2025) ("[A] defendant who would otherwise be precluded from removing an action under the forum-defendant rule may properly remove an action to federal court if that defendant files the notice of removal before it is served with the complaint.") (citing *Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 151-54 (3d Cir. 2018)).  The Court need not evaluate whether Fox Glass was properly served when Tina Koehler received the Complaint on June 30, 2025, (ECF

9

## IV.    CONCLUSION

For the foregoing reasons, and other good cause shown, Plaintiffs' Motion to Remand (ECF No. 6) is **DENIED** and the Court will permit limited jurisdictional discovery.  An appropriate Order follows.


Dated: March 5, 2026

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE

---

No. 2 at 3), because it agrees with Fox Glass's second argument—Ocean Port failed to timely assert the forum-defendant rule even if the rule did apply.  (ECF No. 10 at 21.)

"[T]he forum defendant rule has been deemed a 'procedural' requirement" rather than a jurisdictional one.  *Burga v. UniFirst Corp.*, Civ. No. 20-10849, 2020 WL 8452558, at *3 (D.N.J. Dec. 3, 2020) (citing *Kor. Exch. Bank v. Trackwise Sales Corp.*, 66 F.3d 46, 50-51 (3d Cir. 1995)), *report and recommendation adopted*, 2021 WL 395897 (D.N.J. Feb. 4, 2021).  Accordingly, under 28 U.S.C. § 1447(c), invocation of the forum-defendant rule "must be the subject of a motion to remand within 30 days after filing the notice of removal" or else the invoking party waives the rule's protection.  *Kor. Exch.*, 66 F.3d at 51.  Here, as Fox Glass highlights, Ocean Port "filed its motion well beyond the 30-day period and therefore waived all non-jurisdictional defects to removal."  (ECF No. 10 at 21.)  Ocean Port's only response is that its "motion is not based on procedural objections" and that the "argument that this matter must be remanded under the forum defendant rule is an alternative, independent basis for remanding this matter."  (ECF No. 15 at 6-7.)  Because Ocean Port concedes that it is not making any "procedural objections," and because invocation of the forum-defendant rule is in fact a procedural objection, *Kor. Exch.*, 66 F.3d at 51, the Court understands Ocean Port to be forfeiting the argument.  But even had it not, the Court finds Ocean Port did not timely assert the forum-defendant rule because Fox Glass removed this matter in July 2025 and Ocean Port did not file its Motion to Remand until October 2025, (ECF No. 2; ECF No. 6), which was well past the thirty-day limit.

10